# DEPARTMENT OF EMPLOYMENT et al. *v.* UNITED STATES et al.

No. 78. Argued November 15, 1966.—Decided December 12, 1966.

*James D. McKevitt,* Assistant Attorney General of Colorado, argued the cause for appellants. With him on the brief were *Duke W. Dunbar,* Attorney General, and *Frank E. Hickey,* Deputy Attorney General.

*Jack S. Levin* argued the cause for the United States et al. With him on the brief were *Solicitor General Marshall, Assistant Attorney General Rogovin, Harold C. Wilkenfeld* and *William Massar.*

356

MR. JUSTICE FORTAS delivered the opinion of the Court.

Colorado is one of three States [1] whose Employment Security Act imposes an unemployment compensation tax upon charitable institutions, the tax being measured by the amount of wages paid to the institution's employees. Colo. Rev. Stat. Ann. § 82-6-1. When the State's Department of Employment sought to enforce the tax upon wages paid Colorado-based employees of the American National Red Cross (hereinafter referred to as Red Cross), the Red Cross objected that as a "federal instrumentality" it was immune from such taxation. See *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819). Tax payments aggregating more than $10,000 were made under protest, applications for refund accompanying each payment. The Department of Employment denied each such application. Thereupon the Red Cross, along with the United States as co-plaintiff, invoked the jurisdiction of a three-judge federal District Court to enjoin enforcement against it of the Colorado Employment Security Act on the ground that as applied to it, a federal instrumentality, the statute violated the Federal Constitution. See 28 U. S. C. § 2281.[2] The Department of Employment responded that the Red Cross was not a federal instrumentality, that any immunity it might have had been waived by Congress in the 1960 amendments to the Federal Unemployment Tax

[1] The other States are Alaska and Hawaii. See Alaska Stat. § 23.20.525 (c) (7) (1962); Hawaii Rev. Laws § 93-7 (i) (Supp. 1963).

[2] The statute provides that "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Act (26 U. S. C. § 3301 *et seq.*), and that in any event the Red Cross had failed to exhaust available administrative and state judicial remedies. The three-judge federal District Court ruled in favor of the Red Cross and the United States on each of these issues, ordered a refund of taxes already paid, and enjoined enforcement of the tax statute against the Red Cross. Pursuant to 28 U. S. C. § 1253,[3] the Department of Employment and its executive director sought direct review here. In setting the case for argument, we postponed consideration of questions pertaining to our jurisdiction and that of the three-judge court. 384 U. S. 949 (1966).

We are persuaded that there exist no jurisdictional barriers to our disposition of this appeal on the merits. Any challenge to the applicability of the three-judge court provision, 28 U. S. C. § 2281, is foreclosed by this Court's decision in *Query* v. *United States,* 316 U. S. 486 (1942), where the Court held that three judges were required to entertain a suit to enjoin a state tax statute sought to be enforced against an Army Post Exchange which asserted its immunity as a federal instrumentality,[4] and we do not consider that our later decision in *Swift & Co.* v. *Wickham,* 382 U. S. 111 (1965), requires a different conclusion. Nor is there compelling force in the argument, advanced by appellants, that the Tax Injunction

---

[3] Section 1253 authorizes direct appeal to this Court from an order granting an injunction in any proceeding "required by any Act of Congress to be heard and determined by a district court of three judges."

[4] See also *United States* v. *Georgia Pub. Serv. Comm'n,* 371 U. S. 285, 287 (1963); *Paul* v. *United States,* 371 U. S. 245, 249–250 (1963). Compare Currie, The Three-Judge District Court in Constitutional Litigation, 32 U. Chi. L. Rev. 1, 37–50 (1964), with Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv. L. Rev. 299, 312–313 (1963).

Act (28 U. S. C. § 1341)[5] requires appellees first to exhaust their state remedies, which are alleged by appellants to be "plain, speedy and efficient." We need not decide whether omission to provide interest on a successful refund application renders the state remedy here an inadequate one within the meaning of § 1341. For we conclude, in accord with an unbroken line of authority[6] and convincing evidence of legislative purpose,[7] that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions. With respect to appellants' contention that the State of Colorado has not consented to suit in a federal forum even where the plaintiff is the United States, see *Monaco* v. *Mississippi,* 292 U. S. 313 (1934), and *Ex parte Young,* 209 U. S. 123 (1908).

On the merits, we hold that the Red Cross is an instrumentality of the United States for purposes of immunity from state taxation levied on its operations, and that this immunity has not been waived by congressional enactment. Although there is no simple test for ascertaining whether an institution is so closely related to

---

[5] Section 1341 provides that "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

[6] *United States* v. *Arlington County, Commonwealth of Virginia,* 326 F. 2d 929, 931 (C. A. 4th Cir. 1964); *United States* v. *Bureau of Revenue of State of N. M.,* 291 F. 2d 677, 679 (C. A. 10th Cir. 1961); *United States* v. *Woodworth,* 170 F. 2d 1019 (C. A. 2d Cir. 1948); *City of Springfield* v. *United States,* 99 F. 2d 860, 862 (C. A. 1st Cir. 1938), cert. denied, 306 U. S. 650 (1939); *United States* v. *Livingston,* 179 F. Supp. 9, 11–12 (D. C. E. D. S. C. 1959), aff'd, 364 U. S. 281 (1960).

[7] See S. Rep. No. 1035, 75th Cong., 1st Sess., pp. 2–3 (1937); H. R. Rep. No. 1503, 75th Cong., 1st Sess., pp. 2–3 (1937); 81 Cong. Rec. 1416–1417 (1937).

governmental activity as to become a tax-immune instrumentality, the Red Cross is clearly such an instrumentality. See generally, Sturges, The Legal Status of the Red Cross, 56 Mich. L. Rev. 1 (1957). Congress chartered the present Red Cross in 1905, subjecting it to governmental supervision and to a regular financial audit by the Defense, then War, Department. 33 Stat. 599, as amended, 36 U. S. C. § 1 *et seq.* Its principal officer is appointed by the President, who also appoints seven (all government officers) of the remaining 49 Governors. 33 Stat. 601, as amended, 36 U. S. C. § 5. By statute and Executive Order there devolved upon the Red Cross the right and the obligation to meet this Nation's commitments under various Geneva Conventions,[8] to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe,[9] and to assist the Federal Government in providing disaster assistance to the States in time of need.[10] Although its operations are financed primarily from voluntary private contributions, the Red Cross does receive substantial material assistance from the Federal Government.[11] And time and time again, both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the

---

[8] *E. g.,* Geneva Convention of August 22, 1864, For the Amelioration of the Wounded in Armies in the Field, 22 Stat. 940 (1882); Geneva Convention of July 27, 1929, For the Amelioration of the Condition of the Wounded and the Sick of Armies in the Field, 47 Stat. 2074 (1932); Geneva Convention of August 12, 1949, For the Multilateral Protection of War Victims, 6 U. S. T. & O. I. A. 3114, T. I. A. S. No. 3362.

[9] See, *e. g.,* 10 U. S. C. § 2602; 33 Stat. 600, as amended, 36 U. S. C. § 3.

[10] See 33 Stat. 600, as amended, 36 U. S. C. § 3; 64 Stat. 1109, 42 U. S. C. §§ 1855–1855g.

[11] See, *e. g.,* 46 Stat. 66, as amended, 36 U. S. C. § 13 (permanent headquarters building).

Government.[12]  In those respects in which the Red Cross differs from the usual government agency—*e. g.*, in that its employees are not employees of the United States, and that government officials do not direct its everyday affairs—the Red Cross is like other institutions—*e. g.*, national banks—whose status as tax-immune instrumentalities of the United States is beyond dispute.

Nor did Congress, in the course of amending the federal unemployment compensation tax statute in 1960, strip away any of this immunity.  Certainly there was no intent to do so.  Indeed, in debate on the floor of the House, Chairman Mills and Congressman Ikard of the Ways and Means Committee expressed their view, which was not controverted, that the Red Cross' immunity from state and federal unemployment compensation taxes would survive the amendments.  106 Cong. Rec. 13827 (1960).  And the House Committee Report stated that no nongovernment-owned instrumentality which enjoyed immunity from the federal tax prior to 1960—the Red Cross had such an exemption—was to lose its state-tax immunity.  H. R. Rep. No. 1799, 86th Cong., 2d Sess., pp. 55–56, 125 (1960).  Finally, the present statutory scheme does not deprive the Red Cross of immunity.  That the Red Cross enjoyed immunity prior to the 1960 amendments seems clear, and was at the time conceded by the State of Colorado.[13] Under the pre-existing scheme, § 3305 (b) of Title 26

---

[12] See, *e. g.*, Proclamation of President Taft, August 22, 1911, 37 Stat. 1716; 64 Stat. 1109, 42 U. S. C. §§ 1855a (f), 1855b, 1855c; H. Con. Res. 232, 70 Stat. b32 (1956); H. R. Rep. No. 1728, 82d Cong., 2d Sess., p. 2 (1952).

[13] Such was the opinion of Assistant Attorney General McKevitt, who so informed appellant Department of Employment. See letter of the Assistant Attorney General to appellee Red Cross, dated November 21, 1960, exhibit 2, in support of appellees' motion for summary judgment below.

exempted from state taxation any federal instrumentality exempt from the federal unemployment compensation tax imposed by § 3301. The Red Cross was so exempt as the result of §§ 3306 (c)(6)(B) and 3306 (c)(8), which referred to "service performed in the employ of [a charitable organization]." As amended in 1960, § 3305 (b) continues the state-tax immunity for any "instrumentality to which section 3306 (c)(6) applies." And the latter section as amended includes employment "exempt from the tax imposed by section 3301 by virtue of any provision of law which specifically refers to such section . . . in granting such exemption." 26 U. S. C. § 3306 (c)(6)(B). Although § 3306 (c)(8), which exempts from the federal tax "service performed in the employ of a [charitable institution]," does not contain an explicit citation to § 3301, its sole function is to exempt certain employment from the reach of that section. We hold that federal instrumentalities like the Red Cross, exempted from the federal tax by virtue of § 3306 (c)(8), are likewise exempt from state taxation under § 3306 (c)(6)(B).

Accordingly, the judgment appealed from is

*Affirmed.*