517 F.2d 27
 Mary MILLER et al., Plaintiffs-Appellants,
v.
Beda BAUER, in the Capacity as Assessor, et al., Defendants-Appellees,
and
Indiana State Board of Tax Commissioners, Carlton Phillippi,
Chairman, and Taylor I. Morris, Jr. and Durwood
Strang, Members, Applicant for Intervention.
 No. 74-1138.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 2, 1974.
Decided June 2, 1975.
Rehearing and Rehearing En Banc Denied July 16, 1975.
 
 Elmer Gertz, Solomon Jesmer, Marshall Patner, Chicago, Ill., for plaintiffs-appellants.
 Donald E. Baugher, Jr., La Porte, Ind., Roger K. Claudon, Valparaiso, Ind., Frank J. Lanigan, La Porte, Ind., John L. Hess, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.
 Before PELL, SPRECHER and LAY,* Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 The plaintiffs, lessees of land owned by the United States Government, brought this action, individually and as representatives of a class, seeking declaratory and injunctive relief. The plaintiffs claim that the defendants, county assessors and tax collectors, improperly assessed real estate taxes against the plaintiffs. Jurisdiction was invoked under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. The district court dismissed the complaint on the ground that federal jurisdiction was barred by 28 U.S.C. § 1341 and the plaintiffs appeal.
 
 
 2
 Under 16 U.S.C. § 460u, the Secretary of the Interior is authorized to acquire property for the Indiana Dunes National Lakeshore. In the case of improved property, the owner may, in selling his property to the Government, retain a right of use and occupancy (commonly called a "leaseback") for noncommercial residential purposes for a term of 25 years or less. 16 U.S.C. § 460u-5. Where such a leaseback is retained, the fair market value of the leaseback is deducted from the purchase price. Id.
 
 
 3
 The plaintiffs here allege in their complaint that they sold their property in the lakeshore to the Government but retained leasebacks. The defendants, according to the complaint, eliminated the local and state property tax assessments with respect to the real estate portions of the property acquired by the federal Government but assessed and collected taxes from the plaintiffs for the improvements on the property. The plaintiffs ask that the defendants be enjoined from collecting the tax and that the leasebacks be declared immune from local taxation.
 
 28 U.S.C. § 1341 provides:
 
 4
 "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."
 
 
 5
 The plaintiffs argue, on appeal, that § 1341 does not bar this action because the plaintiffs are instrumentalities of the federal Government or, alternatively, because Indiana does not provide a "plain, speedy and efficient remedy" in its courts.[1]I
 
 
 6
 A state may not, without the consent of Congress, levy a tax directly against the property of the United States or of an instrumentality of the United States. Department of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). Moreover, where the United States or an instrumentality of the federal Government seeks to protect itself from an unconstitutional state tax, § 1341 does not bar the action. Department of Employment, supra, 385 U.S. at 358, 87 S.Ct. 464; Moses v. Kinnear,490 F.2d 21, 24-25 (9th Cir. 1973); Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184, 1186 (9th Cir. 1971), cert. denied,405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972).
 
 
 7
 The plaintiffs here argue that they are acting as the federal Government's "caretakers" with regard to the homes on the Dunes and that, therefore, they are instrumentalities of the United States. The plaintiffs base their assertion on the fact that, under their contract with the federal Government, they are required to insure and maintain the improvements on the property. The plaintiffs also point out that, under 16 U.S.C. § 460u-5, the plaintiffs' use of the property is restricted to noncommercial purposes.
 
 
 8
 "( T)here is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality." Department of Employment, supra 385 U.S. at 358-59, 87 S.Ct. at 467. However, it is well established that a private party does not become an instrumentality of the federal Government merely because the party does business with or has a contract with the United States. City of Detroit, supra ; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926).
 
 
 9
 The relationship between the plaintiffs here and the federal Government was essentially just an ordinary lessee-lessor arrangement. In authorizing the acquisition of the property on the Indiana lakeshore, Congress intended to preserve, "for the educational, inspirational, and recreational use," certain portions of the Indiana Dunes. 16 U.S.C. § 460u. The purpose of the leasebacks, as the plaintiffs concede, was to reduce the acquisition costs for the federal Government. By leasing the homes back to the sellers, the Government recoups at least part of the purchase price attributable to the improvements on the property. See H.R.Rep.No.1782, 89th Cong., 2d Sess., 3 U.S.Code Cong. & Adm.News 4116, 4118-19 (1966). The plaintiffs occupy and use the homes as ordinary lessees. The contract provisions requiring the plaintiffs to insure and maintain the improvements are not uncommon lease provisions. The Government, like many lessors, wants the improvements maintained and insured so that it can lease the premises to another party if the present occupant leaves the premises or breaks the lease.
 
 
 10
 " Today the United States does business with a vast number of private parties." City of Detroit, supra 355 U.S. at 474, 78 S.Ct. at 479. We conclude that the leaseback provisions requiring the plaintiffs to insure and maintain the property of the United States do not elevate the plaintiffs into the status of instrumentalities of the federal Government.[2]
 
 
 11
 The plaintiffs' reliance on Department of Employment, supra, is inapposite. In Department of Employment, the Supreme Court, finding that the Red Cross was an instrumentality of the federal Government, noted:
 
 
 12
 "Congress chartered the present Red Cross in 1905, subjecting it to governmental supervision and to a regular financial audit by the Defense, then War, Department. . . . Its principal officer is appointed by the President. . . . By statute and Executive Order there devolved upon the Red Cross the right and the obligation to meet this Nation's commitments under various Geneva Conventions, to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe, and to assist the Federal Government in providing disaster assistance to the States in time of need. Although its operations are financed primarily from voluntary private contributions, the Red Cross does receive substantial material assistance from the Federal Government. And time and time again, both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." 385 U.S. at 359-60, 87 S.Ct. at 467. (Footnotes omitted.)
 
 
 13
 Here, the plaintiffs, as private parties, have merely contracted with the federal Government for the sale of their land with leasebacks for residential purposes. Unlike the Red Cross, the plaintiffs are not closely scrutinized and regulated by the federal Government. Nor are the plaintiffs relied upon "as an arm of the Government" to perform "a wide variety of functions" for the federal Government.
 
 
 14
 The plaintiffs' reliance on Agua Caliente, supra, a case dealing with Indian leaseholds, is also misplaced. As the Ninth Circuit stated in Agua, "Indian property uniformly is said to be an instrumentality of the United States." This doctrine, the court noted, "is founded upon the premise that the power and duty of governing and protecting tribal Indians is primarily a Federal function." 442 F.2d at 1185. No such principle applies in the present case.
 
 
 15
 The plaintiffs claim, however, that their leasehold interests should, nonetheless, be immune from state taxation on the ground that such tax assessments can result in a charge against the United States and a cloud on the Government's title. Even if we assume that the plaintiffs have some standing to assert the Governmental interest in this respect, and we are not clear what that standing might be, we find the contention to be without merit. "A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country." City of Detroit, supra, 355 U.S. at 470, 78 S.Ct. at 476. The tax here is levied only upon the leasehold interest, not upon the property of the United States. Under Indiana law, the tax liability of the lessee can be enforced by a civil action against the lessee without clouding the title of the United States to the fee. Ind.Code 6-1-52-4. The United States is not liable for the payment of the tax, nor is the property itself subject to any lien if the taxes are not paid. McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819). See Sproul v. Gilbert, 226 Or. 392, 359 P.2d 543, 556 (1961).[3] Moreover, although the tax on the leasehold interests may reduce the market for such interests, "the imposition of an increased financial burden on the Government does not, by itself, vitiate a state tax." City of Detroit, supra, 355 U.S. at 472, 78 S.Ct. at 478.
 
 II
 
 16
 The plaintiffs next contend that Indiana does not provide a "plain, speedy and efficient" remedy and that, therefore, § 1341 does not bar this action.
 
 
 17
 In a recent decision, Cooper v. County Bd. of Review, Ind.App., 276 N.E.2d 533, 537 (1971), the Indiana Court of Appeals, in a comprehensive opinion written by Judge Buchanan, outlined the statutory remedies available, under Indiana law, to a taxpayer challenging a realty tax assessment. These procedures can be briefly summarized. After the assessment is made, an aggrieved taxpayer can appeal the assessment to the County Board of Review, the State Board of Tax Commissioners, a county circuit court, and finally to the Indiana Supreme Court. Ind.Code 6-1-31-1 to 6-1-31-5. The taxpayer may, of course, appeal the decision of the Indiana Supreme Court to the United States Supreme Court. Appeals, moreover, may be consolidated at the judicial level at the request of the appellants. Ind.Code 6-1-31-4. Taxpayers can also secure reassessment of the entire township or any part thereof by filing a petition with the requisite number of signatures with the State Board of Tax Commissioners. Ind.Code 6-1-26-5. Or a taxpayer can petition the State Board of Tax Commissioners to reassess any particular parcel or parcels of real estate in the state. Ind.Code 6-1-26-8. In addition, the State Board of Tax Commissioners can itself, if it deems such action necessary, order reassessment "of any township or townships, county or counties or the state as a whole." Ind.Code 6-1-26-6. Finally, we note that Indiana has in effect a refund statute. Ind.Code 6-1-58-1.
 
 
 18
 The plaintiffs principally contend that these remedies are inadequate on the ground that there is no provision for a class action. The Indiana Code, however, as stated above, specifically provides for a consolidation of appeals, at the appellants' request, at the judicial level. The sole issue is, therefore, whether the remedies provided are inadequate in that there is no consolidation of claims at the initial administrative level.
 
 
 19
 We find the plaintiffs' contention unpersuasive. Since the legal claims of the plaintiffs and their fellow class members are allegedly the same, one suit should be sufficient to determine the constitutionality of the tax. See Matthews v. Rodgers, 284 U.S. 521, 529, 52 S.Ct. 217, 76 L.Ed. 447 (1932). Moreover, the State Board itself could, upon being made aware of the situation through a single claim, order reassessment of the entire area involved.[4] Cooper, supra at 538. We will not assume that the Board would fail to perform its duty under the Constitution or the Indiana statutes.
 
 
 20
 The taxpayers' complaints here that the Indiana remedy is inadequate "appear in reality to be an argument that a better remedy would be available in the federal courts. Neither the judicial decisions nor § 1341 requires that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in the federal courts. Section 1341 merely requires that the state remedy be 'plain, speedy and efficient.' " Bland v. McHann, 463 F.2d 21, 29 (5th Cir. 1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973).
 
 
 21
 Affirmed.
 
 
 
 *
 Circuit Judge Donald P. Lay of the Eighth Circuit is sitting by designation
 
 
 [1]
 The fact that the complaint is based in part on § 1983 does not avoid the prohibition contained in § 1341. Hickmann v. Wujick, 488 F.2d 875 (2d Cir. 1973); Bland v. McHann, 463 F.2d 21 (5th Cir. 1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967)
 
 
 [2]
 Since the duties and responsibilities of the plaintiffs with respect to the improvements are set forth in the statute and contract, no hearing is necessary in order to determine whether the plaintiffs are instrumentalities of the United States. The district court could properly rule on this in a motion to dismiss
 The plaintiffs have submitted, below and in this court, certain letters purportedly from other states indicating that, in such states, leasebacks on Government property are not taxed by the respective states. However, due to the cursory nature of these letters, they offer little support to the plaintiffs' position. We note, moreover, that the fact that some states do not tax such leasebacks does not indicate that such taxing by Indiana is unconstitutional.
 
 
 [3]
 The Department of the Interior, in fact, has stated in a letter to the plaintiffs:
 "(T)he question of whether such retained interests are taxable to the holders thereof is a matter governed by State and local law and one on which the National Park Service has consistently taken a position of complete neutrality. . . . The burden of the tax not falling on the United States and the reserved interest not being owned by it, the United States has no concern as to whether or not this reserved interest is taxable to those who hold it."
 
 
 [4]
 According to the plaintiffs, the property involved in this case is located in only two counties