NAVAJO TRIBAL UTILITY AUTHORITY, an Enterprise of the Navajo Tribe of Indians, Plaintiff-Appellant,

v.

ARIZONA DEPARTMENT OF REVENUE, and Trasente, Neal G., as Director of said Department, Defendants-Appellees.

No. 76–2895.

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1979.

Nancy B. Firestone, Atty. (argued), Washington, D. C., Walter F. Wolf, Jr. (argued), Schuelke & Wolf, Gallup, N. M., for plaintiff-appellant.

Ian A. MacPherson, Asst. Atty. Gen., Phoenix, Ariz., argued for defendants-appellees; Bruce E. Babbitt, Atty. Gen., Phoenix, Ariz., on the brief.

Before WALLACE and TANG, Circuit Judges, and THOMPSON,* District Judge.

WALLACE, Circuit Judge:

The Navajo Tribal Utility Authority (NTUA) appeals from a district court judgment dismissing its action seeking declaratory and injunctive relief against the Arizona Department of Revenue (Department). We conclude that the district court did not have jurisdiction over NTUA's claims, and we therefore affirm.

I

NTUA, created in 1959, is a subordinate economic enterprise of the Navajo Indian Tribe. In 1960, the Tribe and the Arizona Public Service Company (APS) entered into

---

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

agreements providing that, among other things, APS would lease a site on tribal lands for a large coal-fired generating station, and the Tribe would have the right to purchase electric power at wholesale prices from APS at a delivery point within the reservation. Since 1963, NTUA has purchased electric power from APS pursuant to one of these agreements, the Wholesale Power Supply Agreement. This agreement is a cost of service contract which contains an adjustment provision allowing APS to pass through to NTUA the amount of any excise taxes which it may be required to pay by reason of service to the Tribe.

Until 1972, NTUA was not subject to taxes measured by sales made to it in Arizona by APS. In that year, however, the Arizona legislature sought to impose a Transaction Privilege Tax, an Education Excise Tax, and a Special Excise Tax for Education upon amounts received by APS as payment for service to NTUA.

In the district court, NTUA sought declaratory and injunctive relief against the imposition of these taxes upon APS by the Department. NTUA predicated jurisdiction upon 28 U.S.C. §§ 1331(a), 1343(3), and 1362. The Department moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The district judge granted the motion, apparently ruling both that 28 U.S.C. § 1341 barred NTUA's action and that NTUA had failed to state a claim because the only tax burden it suffered arose out of the contract into which it had voluntarily entered.

On appeal, NTUA has asserted that the district judge incorrectly dismissed its action. It contends that jurisdiction is proper pursuant to 28 U.S.C. § 1362, that 28 U.S.C. § 1341 does not bar actions properly brought pursuant to section 1362, and that NTUA has standing to assert and has asserted a claim upon which relief can be granted. Finally, NTUA argues that the district judge improperly refused to convene a three-judge court pursuant to former 28 U.S.C. § 2281.

On our own motion, we requested supplemental briefing on the question of the district court's jurisdiction pursuant to each of the jurisdictional provisions which NTUA originally relied upon in the district court. We now conclude that the district court did not have jurisdiction pursuant to any of these provisions, and that the action was, on this basis, properly dismissed. We therefore do not reach the other issues which NTUA tenders for our decision.

## II

As already observed, NTUA alleged three separate bases of jurisdiction in the district court. When NTUA initiated its action, each of these potentially faced the bar of 28 U.S.C. § 1341, which provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." NTUA concedes that this bar would ordinarily be applicable to its action. NTUA asserts, however, that its status as a tribal enterprise brings it within exceptions to section 1341 as to each of the claimed jurisdictional bases of its action. We discuss first the jurisdictional claim pursuant to section 1362 and then will turn to arguments that sections 1331(a) and 1343(3) provide jurisdiction.

### A.

In attempting to dodge the import of section 1341, NTUA has placed particular reliance upon 28 U.S.C. § 1362, which provides: "The district courts shall have original jurisdiction of all civil actions, brought by any *Indian tribe or band* with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." (Emphasis supplied.) In *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 31, 46 L.Ed.2d 36 (1976), the Supreme Court held that section 1362 provided properly recognized tribes with access to federal courts that "would be at least in some respects as broad as that of the United States

suing as the tribe's trustee." *Id.* at 473, 96 S.Ct. at 1641. The Court concluded that, since the United States could have sued on the plaintiff tribe's behalf in the circumstances of that case, and since, pursuant to *Department of Employment v. United States,* 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), the United States was not barred by section 1341 from seeking injunctive relief against the imposition of state taxes, the Tribe was not barred from doing so either. *Id.* at 473–75, 87 S.Ct. 464. Thus, if NTUA can bring itself and the circumstances of this case within the purview of section 1362, it can establish jurisdiction in this case and avoid the bar of section 1341.

■ We conclude that NTUA cannot ground jurisdiction on section 1362. That section plainly provides only for jurisdiction of actions brought by an "Indian tribe or band." We are convinced that section 1362 does not cover subordinate, semi-autonomous tribal entities and that NTUA should not be viewed as a tribe for purposes of that section. We now consider each of these conclusions.

1.

Section 1362 makes no provision for wholly controlled or owned subordinate economic tribal entities, nor did the Supreme Court in *Moe* suggest that section 1362 provided for jurisdiction beyond the plain language of the statute, that is, beyond Indian tribes or bands. Our conclusion is strengthened by the fact that other cases have explicitly limited the scope of this section in at least two circumstances.

In one of the first cases to construe the statute, we held that section 1362 "has no application" to the claims of individual members of Indian tribes or bands. *Quinault Tribe of Indians v. Gallagher,* 368 F.2d 648, 656 (9th Cir. 1966), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967); *accord, e. g., United States v. State Tax Comm'n,* 505 F.2d 633, 638 (5th Cir. 1974); *Moses v. Kinnear,* 490 F.2d 21, 25 (9th Cir. 1974); *Cape Fox Corp. v. United States,* 456 F.Supp. 784, 797 (D.Alaska 1978)

(dictum); Moore's Federal Practice ¶ 0.62[18.–3], at 700.70 (2d ed. 1979); 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3579, at 523 (1975).

Suits brought by tribal corporations have also been found to fall outside the scope of section 1362. As the court in *Cape Fox Corp. v. United States, supra,* stated: "Native corporations are not tribes or bands." 456 F.Supp. at 798 (footnote omitted) (dictum); *accord, United States v. State Tax Comm'n, supra,* 505 F.2d at 638; *Dodge v. First Wis. Trust Co.,* 394 F.Supp. 1124, 1127 (E.D.Wis.1975).

2.

In relation to our conclusion that NTUA should not be considered a tribe pursuant to section 1362, we acknowledge that the court in *Cape Fox Corp.* did suggest that "shareholders and directors of a Native corporation suing in a non-corporate capacity could possibly be regarded as a tribe." 456 F.Supp. at 798 (dictum). Yet, the court there had no occasion to consider the merits of this question.

■ The Supreme Court has, in a different situation, analyzed the composition of tribes and bands, generally. The Court stated:

By a "tribe" we understand a body of Indians of the same or a similar race, united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory; by a "band," a company of Indians not necessarily, though often of the same race or tribe, but united under the same leadership in a common design. While a "band" does not imply [a] separate racial origin . . . , it does imply a leadership and a concert of action.

*Montoya v. United States,* 180 U.S. 261, 266, 21 S.Ct. 358, 359, 45 L.Ed. 521 (1901), *quoted in Cape Fox Corp. v. United States, supra,* 456 F.Supp. at 797 (dictum) (consideration of "tribe or band" for purposes of section 1362). As the court in *Cape Fox Corp.* observed in dictum, "In short, Indian tribes or bands are separate communities of

citizens of Indian descent, possibly with a common racial origin, possessing the power of a sovereign to regulate their internal and social relations." 456 F.Supp. at 797 (footnote omitted). Apparently NTUA and the United States, as *amicus curiae,* would accept such a definition, and the Department apparently does not contest the status of the Navajo Tribe of Indians, as a duly recognized tribe for the purposes of section 1362. Instead, NTUA and the United States suggest that since NTUA is ultimately controlled by and closely related to the Tribe itself, it should be treated as a tribe for jurisdictional purposes. We cannot agree.

It is true, as NTUA and the United States argue, that NTUA acts for the Tribe in providing electric power to the Navajo reservation. There is obviously a substantial relationship between the Tribe and NTUA, and the Tribal leadership does exercise some measure of control over NTUA.[1] Additionally, NTUA has not been incorporated pursuant to Arizona or other state law. Yet, "[i]t is intended that control and operation of [NTUA] shall be patterned as closely as is feasible on the lines of a chartered public service corporation of similar magnitude with a Management Board comparable to a Board of Directors of such a corporation." 21 Navajo Tribal Code § 6. NTUA is thus expected to exercise a substantial degree of autonomy. Moreover, as NTUA concedes, three of its seven directors are not members of the Tribe. The Board of Directors is not synonymous with the Tribal Council or even a committee thereof. Rather it is a somewhat, although not a completely, independent entity. Certainly NTUA exercises independent judgment, as it apparently did in its decision to bring suit here. There is no suggestion that the Tribal Council or its advisory committee even

considered, much less authorized, NTUA's litigation which is now before us. Nor has there been any suggestion that there is any requirement that NTUA seek such approval.

In *Moe,* the Supreme Court found that Congress intended, through enactment of section 1362, to allow Indian tribes and bands to sue, when for some reason the United States chooses not to do so on their behalf. As the Court observed, the legislative history of section 1362 is "hardly . . . unequivocal" on even this point. 425 U.S. at 473, 96 S.Ct. 31. There is not the slightest suggestion in the plain language of section 1362 itself or its limited legislative history that Congress designed the statute to provide access to federal courts for subordinate, semi-autonomous entities of Indian tribes and bands. If the leadership of a tribe or band decides that litigation is necessary to protect the rights of the tribe or band, then section 1362 will provide federal court access to the tribe or band when the other jurisdictional requirements of that section are also met.

We are not convinced by the arguments of NTUA and the United States that *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), requires a contrary result. In *Mescalero,* New Mexico attempted to tax the tribe based upon gross receipts and certain personal property of Sierra Blanca Ski Enterprises, which the tribe owned and operated. The tribe petitioned the Supreme Court for review of unfavorable rulings in the state courts regarding its liability for these taxes. The Court did not question the tribe's standing to protest these taxes. Here, of course, a tribe is not a party. Nevertheless, the United States argues that the Court's decision implicitly recognized "that a tax

---

1. NTUA is expected to provide the Tribe with a fair return on its investment, 21 Navajo Tribal Code (N.T.C.) § 5(a)(6); NTUA is "expected to exercise its authorized powers in the best interests of the Navajo Tribe," 21 N.T.C. § 7(a)(5); and, perhaps most significantly, NTUA is required to take title to real property and other acquisitions, including copyrights and patents, in the name of the Tribe, 21 N.T.C. § 7(b)(5),

(7). Moreover, a committee of the Tribal Council appoints the directors of NTUA's Management Board, 21 N.T.C. § 9(a), the Board must furnish the minutes of each meeting to that committee, 21 N.T.C. § 7(a)(7), and the Tribal Council must approve the Management Board's selection of the NTUA's General Manager, 21 N.T.C. § 7(b)(3).

against a tribal enterprise is a tax against the tribe itself, even though the tribe may be acting in a business capacity." Even assuming, without deciding, this to be true, *see Mescalero Apache Tribe v. Jones, supra,* 411 U.S. at 157 n. 13, 93 S.Ct. 1267 n. 13, such a view speaks only to the question of tax immunity, not to the question of federal jurisdiction. Moreover, *Mescalero* arose in state court. "United States District Courts are courts of limited jurisdiction and jurisdictional statutes are closely construed." *McCord v. Dixie Aviation Corp.,* 450 F.2d 1129, 1131 (10th Cir. 1971). Indeed, it has been stated that statutory jurisdictional doubts are to be resolved against federal jurisdiction. *F & S Constr. Co. v. Jensen,* 337 F.2d 160, 161 (10th Cir. 1964). *Mescalero* simply does not assist the United States on this issue.

■ We do recognize that " 'statutes passed for the benefit of dependent Indian tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians,' " *Bryan v. Itasca County,* 426 U.S. 73, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976) (quoting *Alaska Pac. Fisheries v. United States,* 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918)). There are here, however, no such doubtful expressions to resolve. Section 1362 is not ambiguous insofar as its application is restricted solely to Indian tribes and bands.

To the extent that NTUA's interests are identified with the Tribe's, the Tribe itself will be able to protect those interests, should *its* leadership decide to do so. *See Mescalero Apache Tribe v. Jones, supra.*

We thus conclude that section 1362 does not provide a jurisdictional basis for NTUA's claims asserted here.

### B.

We next consider NTUA's argument that jurisdiction is proper pursuant to 28 U.S.C. §§ 1331(a) or 1343(3),[2] and that at least under the circumstances of this case, the bar of section 1341 is inapplicable. Even assuming that the jurisdictional prerequisites to both of these sections are met, we conclude that this case provides no basis for avoiding the prohibition of section 1341.[3]

In *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184, 1185–86 (9th Cir. 1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972), and again, in *Moses v. Kinnear, supra,* 490 F.2d at 24–25, we relied exclusively upon the so-called federal-instrumentality doctrine, in holding that parties, such as individual Indians, who could properly be coplaintiffs with the United States, would be entitled to an exemption from the operation of section 1341. *See also Capitan Grande Band of Mission Indians v. Helix Irrig. Dist.,* 514 F.2d 465, 471 (9th Cir. 1975); *Omaha Tribe of Indians v. Peters,* 516 F.2d 133, 135–36 (8th Cir. 1975), *vacated on other grounds,* 427 U.S. 902, 96 S.Ct. 3185, 49 L.Ed.2d 1196 (1976). In *Moe,* however, the Supreme Court made it clear that its earlier decision in *Mescalero Apache Tribe v. Jones, supra,* 411 U.S. at 150–55, 93 S.Ct. 1267, had "effectively eliminated [the federal instrumentality] doctrine as a basis for immunizing Indians from state taxation." 425 U.S. at

---

**2.** 28 U.S.C. § 1331(a) provides in part:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . .

28 U.S.C. § 1343 provides in part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege

or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

**3.** NTUA does not contend that suits, such as its own, which seek declaratory as well as injunctive relief, are beyond the scope of section 1341. *See Kelly v. Springett,* 527 F.2d 1090, 1094 (9th Cir. 1975) (suits for refunds, as well as those for anticipatory relief, come within scope of section 1341); *28 E. Jackson Enterprises, Inc. v. Cullerton,* 523 F.2d 439, 440 n. 2 (7th Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

474 n. 13, 96 S.Ct. at 1641 n. 13. As the Court stated in *Moe*, while the federal-instrumentality concept "may well have greater usefulness in determining the applicability of § 1341 . . . than in providing the touchstone for deciding whether or not Indian tribes may be taxed, . . . we do not believe that the District Court's expanded version of this doctrine . . . can by itself avoid the bar of § 1341." 425 U.S. at 471–72, 96 S.Ct. at 1640 (citations omitted).

NTUA concedes that *Agua Caliente* and *Moses* "no longer can form the basis for a finding of jurisdiction in this action, with respect to either § 1331(a) or § 1343(3)" insofar as those cases "relied upon the federal instrumentality doctrine to sustain their jurisdiction" as against the bar of section 1341. NTUA argues, however, that the special relationship between the United States government and Indian tribes, which led the court in *Moe* to permit jurisdiction based upon a modified coplaintiff doctrine pursuant to section 1362, should also allow for jurisdiction in this case pursuant to sections 1331(a) and 1343(3), despite the prohibition of section 1341. Moreover, NTUA argues that *Kelly v. Springett*, 527 F.2d 1090, 1094 (9th Cir. 1975), which held that claims asserted pursuant to section 1343(3) are subject to the proscription of section 1341, is distinguishable because the United States could have sued to protect the interests of the Tribe here, and because, as a subordinate tribal enterprise, NTUA is seeking to protect interests which are identical to those of the Tribe. These arguments are unpersuasive.

■ While section 1362 has been read to provide a coplaintiff exemption to the operation of section 1341, that coplaintiff exemption arose out of the congressional intent which the Court determined rested in the passage of section 1362 itself. *Moe v. Confederated Salish & Kootenai Tribes, supra*, 425 U.S. at 472–73, 96 S.Ct. 31. Moreover, it was the Indian tribe or band itself which *Moe* recognized as the suitable coplaintiff pursuant to section 1362. At least in the absence of a significantly greater identification between tribal leadership and membership, on the one hand, and management of the subordinate tribal enterprise, on the other, than that demonstrated here, we cannot treat NTUA as the Tribe for jurisdictional purposes. Nor would our conclusion be different even if we assumed that the Tribe itself, or its individual members, absent section 1362, could reap the benefits of the *Moe* coplaintiff rule with respect to section 1341, a question we do not reach. While NTUA is expected to act in the Tribe's best interests, the management of this semi-autonomous entity, including non-Navajo members, presumably has brought this action in its own particular interests, whereas the Tribe may have other interests which such litigation neglects. In any event, the Tribe has not chosen to join the litigation now before us and has apparently yet to initiate any on its own pertaining to this controversy.

■ Thus, the abrogation of the federal-instrumentality doctrine, and the Supreme Court's heavy reliance in *Moe* upon section 1362, within the purview of which NTUA does not come, leave the federal courts without jurisdiction of this action pursuant to section 1331(a) or section 1343(3).

AFFIRMED.