**MOUNT OLIVET CEMETERY ASSOCIATION, et al.,**
**Plaintiffs,**

v.

**SALT LAKE CITY, Defendant.**

**Civil No. 2:96–CV–196C.**

United States District Court,
D. Utah, Central Division.

April 24, 1997.

Daniel L. Berman, Jay D. Gurmankin, Peggy A. Tomsic, Daniel S. Day, Berman, Gaufin, Tomsic & Savage, Salt Lake City, UT, for Plaintiffs.

Steven W. Alfred, Salt Lake City Attorney's Office, Salt Lake City, UT, for Defendant.

## ORDER

CAMPBELL, District Judge.

This action challenges a Salt Lake City zoning ordinance which designates the Mt. Olivet Cemetery property as "open space." This matter is presently before the court on the parties' cross-motions for summary judgment. A hearing on the parties' motions was held on March 12, 1997, at which time the court took the motions under advisement. Having considered the memoranda submitted by the parties and the arguments presented by counsel at the hearing, the court now grants defendant's motion and denies plaintiffs' motion.

**Background**

The Mount Olivet Cemetery Association ("Association") was established by an 1874 Act of Congress that authorized the Secretary of War to set aside twenty acres in the U.S. Military Reservation at Camp Douglas as a public cemetery and to establish rules and regulations for the cemetery's care and management. The Secretary exercised this authority in 1877. The rules and regulations promulgated by the Secretary required that the cemetery be managed by a board of

directors composed of the commanding officer of Camp Douglas, clergy from various religious denominations, and laypersons. The board was expressly prohibited from "creat[ing] any debt, liability, or obligation for the payment of money which shall be binding upon ... the United States." Organization, By–Laws, and Rules and Regulations or the Mt. Olivet Cemetery ¶ 6 (1877). The rules and regulations also established the directors' duties and required that all monies generated by the cemetery's operation be "scrupulously kept for the purposes of [the cemetery], and no part thereof shall be diverted or devoted to any other use or purpose whatever." *Id.*

In 1909, Congress authorized the Secretary of War to convey the original twenty-acre parcel, plus an additional thirty acres, to the Association. Ch. 37, 35 Stat. 589 (1909). The deed conveyed the premises:

> unto and to the use of the said Mount Olivet Cemetery Association forever as a cemetery for the burial of the dead: *Provided:* That when the said premises shall cease to be used for such purpose they shall revert to the United States[.]

Deed of Conveyance, February 10, 1909, Attached as Exhibit "3" to Aff. of Daniel S. Day (Docket No. 15) (emphasis in original). Between 1909 and 1995, the property was used for non-cemetery purposes only twice. In 1914, the Emigration Canyon Railroad Company was permitted to occupy a portion of the property for a railroad right of way. In 1952, the City of Salt Lake was granted a portion of the property adjacent Sunnyside Avenue. On both occasions, Congress enacted legislation authorizing the activity. *See* Ch. 14, 38 Stat. 279 (1914) & Ch. 130, 66 Stat. 36 (1952).

Faced with an operating deficit in the late 1980s and early 1990s, the Association sought Congressional authorization to lease portions of the property to generate income. These efforts culminated in 1992 with the enact-ment of legislation ("1992 Act") authorizing the Association "to lease for use other than as a cemetery, for a period of not more than 70 years, any portion of the land ... so long as such additional use will not prevent future use for cemetery purposes." Pub.L. No. 102–347, 106 Stat. 930 (1992).[1]

In December 1995, the Association entered into a lease with plaintiff Johnson Land Enterprises, LLC ("Johnson") for approximately twenty acres of Mt. Olivet property. Johnson intends to construct a skilled nursing facility and retirement living facilities on the site. Pursuant to the terms of the 1992 Act, the lease was submitted to the Department of Interior for approval. On January 10, 1996, the Bureau of Land Management ("BLM") determined that the Johnson lease was consistent with the provisions of the 1992 Act. Approximately eight months prior to the agreement, however, the defendant Salt Lake City ("City") enacted a zoning ordinance which designated all of the Mt. Olivet property as "open space." Uses permitted by the "open space" designation include cemeteries, community and recreation centers, country clubs, golf courses, public and private nature preserves/conservation areas, public parks, private recreational facilities, zoological parks, local governmental facilities, and public/private utilities. Salt Lake City Code § 21A.32.130 (1996). Thus, use of a portion of the property, leased by the Association to the Salt Lake City School District, as a high school athletic field and stadium is permitted by the ordinance. Development of the type contemplated by Johnson, however, is prohibited.

Plaintiffs contend that the Mt. Olivet property is owned by the United States, that federal legislation and rules and regulations control the property's use, and that the City's zoning ordinance violates Utah Code Ann. § 10–9–105 and is preempted by federal law. The City maintains that the property is

---

1. The full statute reads:

   Notwithstanding the Act of January 23, 1909 (chapter 37, 35 Stat. 589), the Secretary of the interior shall execute such instruments as may be necessary to allow the Mount Olivet Cemetery Association of Salt Lake City, Utah, to lease for use other than as a cemetery, for a period of not more than 70 years, any portion of the land described in the first section of that Act, excluding the tract of land granted to Salt Lake City Utah, pursuant to the Act of April 3, 1952 (66 Stat. 36), so long as such additional use will not prevent future use for cemetery purposes.

private property owned by the Association and that the zoning ordinance neither violates the Utah statute nor is preempted by federal law.

## Discussion

Summary judgment is proper only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment bears the initial burden of informing the court of the basis of its motion. It may do so by identifying portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–74 (1986). In response, the non-moving party must go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and answers on file, demonstrate that a genuine issue of material fact exists. *Id.* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274–75. If the non-movant fails to meet this burden, summary judgment is appropriate. *See id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 272–73. In applying the summary judgment standard, the court must construe the record and reasonable inferences therefrom in the light most favorable to the non-movant. *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995). The fact that the parties have filed cross-motions for summary judgment does not affect the applicable standard. *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).

*Ownership of the Mt. Olivet Property:*

■ Utah Code Ann. § 10–9–105 (1996) prohibits a planning commission, city council, or city commission from exercising "jurisdiction over properties owned by the State of Utah or the United States Government." Because the Mt. Olivet property is owned by the Association, not the federal government, § 10–9–105 is not implicated in this case.

■ By the 1909 deed, the federal government conveyed the Mt. Olivet property to the Association in fee simple determinable and retained a possibility of reverter. It is well established that a possibility of reverter is a contingent future interest in real property. Lewis M. Simes, Law of Future Interests, § 13 (2d Ed.1966). Plaintiff describes the United States' possibility of reverter as a "reversionary interest in the Mt. Olivet property." Plaintiffs' Memorandum in Support of Motion for Summary Judgment, at 13 (Docket No. 13). This position, however, is incorrect for it conflates two distinct common law property concepts—a possibility of reverter and a reversionary interest.

> A possibility of reverter is traditionally defined as the interest remaining in a grantor who has conveyed a determinable fee. The definition has not been thought to have any relation to the reversionary interest of a grantor who has transferred either a vested or contingent remainder in fee.

*Helvering v. Hallock*, 309 U.S. 106, 118 n. 6, 60 S.Ct. 444, 451 n. 6, 84 L.Ed. 604, 612 (1940).

Here, the federal government's interest in the Mt. Olivet property will vest if and only if the property is used for a non-cemetery purpose. While the property has been put to such use in the past, Congress has, on each occasion, enacted legislation that prevented the United States' future interest from vesting. The 1992 Act, like its 1914 and 1952 predecessors, simply waives the United States' possibility of reverter. Accordingly, the federal government's interest in the property remains contingent.

*Preemption*

State laws that "interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution," *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 2, 6 L.Ed. 23 (1824)), are invalid under the Supremacy Clause of the Constitution, art. VI, cl. 2. "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981). *See also Mortier*, 501 U.S. at 605, 111 S.Ct. at 2482, 115

L.Ed.2d at —— ("[w]hen considering preemption, 'we start with the assumption that the historic police powers of the States were not to be superseded by [a federal act] unless that was the clear and manifest purpose of Congress'" (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947))).

■ Plaintiffs contend that this case falls into the class of cases where, because of the presence of a federal instrumentality, the traditional presumption against finding federal preemption is inverted. Citing *Don't Tear It Down, Inc. v. Pennsylvania Avenue Development Corp.*, 642 F.2d 527 (D.C.Cir. 1980), plaintiffs assert that:

> [i]n situations where federal and local enactments overlap in their effects on nongovernmental activities, the Supreme Court has consistently reminded us that, to the extent possible, the proper approach is to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted. The Court has taken a different tack, however, in cases involving local laws that impact directly on federal operations, on the management of federal installations, or on the use of federal property, where considerations of sovereignty come into play. Insofar as such laws substantially impede federal activities or directly place a prohibition on the federal government, the Court has treated them as presumptively invalid under the Supremacy Clause.

*Id.* at 534–35 (internal quotations and citations omitted). Plaintiffs' argument is flawed, however, because they fail to establish that the Association or the cemetery is a federal instrumentality.

■ There is no precise formula for determining whether an entity is a federal instrumentality. *T.I. Federal Credit Union v. DelBonis*, 72 F.3d 921, 931 (1st Cir.1995); *see also Dep't of Employment v. United States*, 385 U.S. 355, 358–59, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966) ("there is no simple test for ascertaining whether an institution is so closely related to government activity as to become a tax immune instrumentality"). Rather, courts look to various factors and characteristics to determine the status of an entity, including:

> whether it is organized for private profit, and whether the Government has retained such control over it so that it could properly be called a servant of the United States in agency terms; whether it was organized to effectuate a specific governmental program; whether its ownership, substantially or totally, lies in the government; whether government officials handle and control its operations, whether its officers or any significant portion of them are appointed by the Government; whether the Government gives it significant financial aid.; ... and whether it performs functions indispensable to the workings of a governmental unit.

*First Agricultural National Bank of Berkshire County v. State Tax Commission*, 392 U.S. 339, 353–54, 88 S.Ct. 2173, 2181, 20 L.Ed.2d 1138, 1148 (1968) (Marshall, J., dissenting); *see also Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374, 396, 115 S.Ct. 961, 973–74, 130 L.Ed.2d 902, 920–22 (1995) and *Cherry Cotton Mills v. United States*, 327 U.S. 536, 539, 105 Ct.Cl. 824, 838, 66 S.Ct. 729, 90 L.Ed. 835 (1946).

Applying these factors, neither the Association nor the cemetery can be considered a federal instrumentality. The Association is a non-profit corporation organized under Utah law. As outlined above, the Mt. Olivet property is owned by the Association, and pursuant to its rules and regulations, the Association determines how and when its directors are selected, appoints inferior officers and fixes their compensation, sets the fees for services and burial plots, and possesses the power to adopt rules and regulations for its conduct. There is no financial relationship between the Association and the United States. The Association receives no federal funding, its profits are not deposited in the federal treasury, and its board of directors is explicitly prohibited from creating any debt or liability upon the federal government. Daily management and operation of the cemetery is conducted by the Association with no federal oversight. Indeed, there is no evidence that the federal government is involved in any way with cem-

etery operations. Further, neither the Association nor the cemetery performs a significant federal government function. While veterans of the nation's armed conflicts are buried in the cemetery, any person, regardless of veteran status, may be buried there. Finally while is true that the cemetery and the Association owe their existence to congressional legislation, this reasoning was rejected long ago as a basis alone for designating an entity as a federal instrumentality. *Railroad Co. v. Peniston*, 85 U.S.(18 Wall.) 5, 32, 21 L.Ed. 787 (1873). Because neither the association nor the cemetery is a federal instrumentality, the court applies traditional preemption principles.

■ "Federal law preempts state law explicitly if the language of the federal statute reveals an express congressional intent to do so." *United States v. Denver, City and County Of*, 100 F.3d 1509, 1512 (10th Cir. 1996) (citing *Barnett Bank of Marion County v. Nelson*, —— U.S. ——, —— – ——, 116 S.Ct. 1103, 1107–08, 134 L.Ed.2d 237, 242–44 (1966)). Where such express language is absent, a state law may still be preempted implicitly, either by field or conflict preemption. *Id.*

#### A. *Express Preemption:*

■ The language of the 1992 Act neither mentions zoning nor discusses the exercise of local zoning authority over the Mt. Olivet property. "Mere silence, in this context, cannot suffice to establish a clear and manifest purpose to preempt local authority." *Mortier*, 501 U.S. at 607, 111 S.Ct. at 2483, 115 L.Ed.2d at —— (internal quotations omitted) (citing *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152, 91 L.Ed. at 1459).

The legislative history of the 1992 Act likewise evinces no clear Congressional intent to preempt local zoning of the Mt. Olivet property. If anything, the legislative history indicates that Congress envisioned that use of the property would be consistent with the "open space" designation. Early drafts of the 1992 Act authorized the Association to

lease the property for use as a golf course and training facility. Only the final version of the Act omitted such references. Further, addresses made on the floors of the House of Representatives and the Senate by the Act's sponsors, Representative Wayne Owens and Senator Orrin Hatch, contemplated that the property would be used for recreational purposes and were silent as to local zoning authority.[2] The House and Senate Reports accompanying the Act mirror the sponsors' comments.[3] Given both the language of the 1992 Act and its legislative history, it cannot be said that Congress expressly preempted local zoning of the Mt. Olivet property.

#### B. *Field Preemption:*

Field preemption exists:

if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, if the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority.

*Mortier*, 501 U.S. at 605, 111 S.Ct. at 2481–82, 115 L.Ed.2d at —— (1991). Field preemption cannot be inferred. *Id.* at 612, 111 S.Ct. at 2486, 115 L.Ed.2d at ——.

■ Plaintiffs argue that the 1874, 1909, and 1992 Acts, as well as the various rules and regulations, establish a federal scheme controlling the use of the Mt. Olivet property. In particular, plaintiffs point to BLM's approval of the Johnson lease as evidence that federal government occupies the entire field regarding use of the property. This argument mischaracterizes the federal government's role. At most, the acts, rules, and regulations define the government's future interest in the Mt. Olivet property. Zoning is not mentioned in any of the acts, rules, or regulations, and they do not discuss permitted or prohibited uses of the property. In-

**2.** Representative Owens' address appears at 137 Cong. Rec. E1292 (1991). Senator Hatch's address appears at 137 Cong. Rec. § 4350 (1991).

**3.** H.R.Rep. No. 102–821 (1992); S.Rep. No. 102–205 (1992).

deed, the language of the 1992 Act makes clear that Congress' only concern was that the Mt. Olivet property be available for cemetery use when needed. BLM's approval of the Johnson lease is entirely consistent with this reading. BLM approved the lease only insofar as it was "consistent" with the 1992 Act, that is, that the lease did not exceed seventy years and that it involved a non-cemetery use of the property. BLM did not, however, approve the specific use of the property contemplated by the Association and Johnson. In fact, BLM "consider[ed] the subject land to be private land ... [and had] no intent to override the authority of local jurisdictions to permit or approve the use of the property." Letter from Teresa Catlin, Chief Branch of Lands & Minerals Operations, to Roger Culter, Salt Lake City Attorney, of February 9, 1996, Attached as Exhibit "6" to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross–Motion for Summary Judgment (Docket No. 32).

There simply is no federal scheme controlling the Mt. Olivet property and no dominant federal interest. Likewise, there is no indication that Congress intended to preclude state authority. Thus, field preemption is not applicable here.

### C. *Conflict Preemption:*

 Conflict preemption exists "where it is impossible ... to comply with both the state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385, 392 (1995) (internal quotations and citations omitted). No such conflict exists here. The 1992 Act evidences Congress' intent to waive its future interest in the Mt. Olivet property for seventy years so that use of the property for non-cemetery purposes would not cause title to revert to the United States. The City's zoning ordinance neither makes it impossible to comply with the 1992 Act (or its predecessors) nor impedes Congress' objectives. In fact, the "open space" zoning designation permits many non-cemetery uses of the Mt.

Olivet property. That the zoning ordinance prohibits uses that would be more lucrative for plaintiffs is immaterial. Because the zoning ordinance and the acts, rules, and regulations of Congress can be easily reconciled, there is no conflict preemption in this case.

### Conclusion

Defendant's motion for summary judgment is hereby GRANTED and plaintiffs' motion for summary judgment is hereby DENIED. The Office of the Clerk is directed to enter judgment in favor of the defendant.