145 P.3d 693

**JACK'S TOURS, INC., Complainant–Appellant,**

v.

**KILAUEA MILITARY CAMP,**
Respondent–Appellee.

No. 27442.

Supreme Court of Hawai'i.

Sept. 29, 2006.

Wray H. Kondo, Emi L.M. Kaimuloa, Christopher J. Bennett (of Watanabe Ing &

Komeiji), on the briefs, Honolulu, for complainant-appellant Jack's Tours.

R. Michael Burke, Assistant U.S. Attorney, on the briefs, for respondent-appellee Kilauea Military Camp.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; Circuit Judge NISHIMURA, in place of ACOBA, J., Recused.

Opinion of the Court by MOON, C.J.

Complainant-appellant Jack's Tours, Inc. (Jack's Tours) appeals from the June 17, 2005 decision and order of the State of Hawai'i Public Utilities Commission (PUC) in favor of respondent-appellee Kilauea Military Camp (KMC). The PUC dismissed Jack's Tours' complaint for lack of subject matter jurisdiction, concluding, *inter alia,* that the Supremacy Clause of the United States Constitution, quoted *infra,* preempts any state regulation over KMC.

On appeal, Jack's Tours claims that the PUC erred in dismissing its complaint for lack of subject matter jurisdiction. For the reasons discussed below, we affirm the PUC's June 17, 2005 decision and order.

## I. *BACKGROUND*

### A. *Factual Background*

KMC is a "Joint Services Recreation Center" located in Hawai'i Volcanoes National Park on the island of Hawai'i, State of Hawai'i (the Big Island) and is owned and operated by the federal government. KMC offers accommodations, amenities, and tour packages over the public highways on the Big Island. Specifically, it advertises on its website that it "is a resort with a surprising array of amenities and activities" and that its tours "cover the many wonders of the Big Island." KMC "is open to all active and retired military, Reserve and National Guard members, current and retired Department of Defense civilian employees, dependents, and sponsored guests."

Jack's Tours is a privately owned and operated tour company that operates tours for the general public over the public highways on the Big Island. According to Jack's Tours, because it is a "common carrier by motor vehicle" [1] [hereinafter, common carrier], it is required to, and does, have a "Certificate of Public Convenience and Necessity" (CPCN) issued by the PUC, pursuant to HRS § 271–8 (1993).[2] In addition, Jack's Tours claims that several of its tours "closely resemble" tours offered by KMC. Jack's Tours alleges that KMC's website not only states that KMC offers tours to "all active and retired military, Reserve and National Guard members, current and retired Department of Defense civilian employees, dependents, and sponsored guests," but that KMC also offers tours to "others." Jack's Tours further alleges that information pertaining to the tours offered by KMC is available on its website and that KMC "will provide such information by mail to members of the general public."

Jack's Tours claims that, on January 29, 2004, "KMC buses were sighted transporting a group of 'Āina Haina School students and their chaperones." In its view, such "tour appear[s] to involve the transportation of members of the general public and their property for compensation/hire over the public highways on the [Big Island] by KMC[.]" According to Jack's Tours, the students and

---

1. Hawai'i Revised Statutes (HRS) § 271–4(11) (Supp.2005) defines "common carrier by motor vehicle" as "any person which holds itself out to the general public to engage in the transportation by motor vehicle of passengers or property of any class or classes thereof for compensation."

2. HRS § 271–8 provides that, "[e]xcept as provided in section 271–5, no person shall engage in the transportation of persons or property, for compensation or hire, by motor vehicle, over any public highway of this State unless there is in force with respect to the person *a certificate* or permit issued by the [PUC] authorizing the trans-

portation." (Emphasis added.) Section 271–5 (Supp.2005) sets forth numerous exemptions from complying with chapter 271, which are not at issue in the instant case. HRS § 271–4(4) (Supp.2005) defines "certificate" as a CPCN.

We also note that HRS § 271–*12* (1993) specifically provides in relevant part that "no person shall engage in the business of a common carrier by motor vehicle on any public highway in this State, unless there is in force with respect to such carrier a [CPCN] issued by the [PUC] authorizing such operation."

their chaperones had earlier spent two nights at KMC and were transported throughout the day by KMC buses to several destinations on the Big Island. Consequently, Jack's Tours claims that, because KMC allegedly "holds itself out to the general public" "as an entity engaged in the transportation by motor vehicle of passengers and property for compensation[,]" KMC is a common carrier and, therefore, subject to regulation by the PUC. The record does not indicate whether KMC possesses a CPCN.

## B. *Procedural History*

 On June 4, 2004, Jack's Tours filed a complaint against KMC with the PUC, alleging that KMC is a common carrier and, thus, subject to the PUC's regulation. Jack's Tours alleged that KMC was transporting members of the general public over the State's highways in exchange for compensation without a CPCN, as required by HRS § 271–8. Moreover, Jack's Tours claimed that the Supremacy Clause,[3] the preemption doctrine,[4] and the "federal enclave exception"[5] do not provide KMC with immunity from the State motor carrier law, as codified in HRS chapter 271. Specifically, Jack's Tours alleged that "[n]on-military tours that transport members of the general public over the public highways on the [Big Island] do

not constitute an essential governmental function."

According to Jack's Tours, KMC's violation of HRS § 271–8 "injure[s] PUC regulated motor carriers, such as Jack's Tours, by promoting unfair or destructive competition and providing KMC with an undue preference and advantage." Specifically, Jack's Tours asserted that, although it "and all other motor carriers[ ] must abide by rates regulated by the [m]otor [c]arrier [l]aw[, *i.e.*, HRS chapter 271] and the [PUC], KMC is able to provide attractive and substantially discounted rates to members of the general public who would otherwise be customers of PUC regulated motor carriers." Thus, Jack's Tours requested the PUC to find KMC in violation of HRS § 271–8 and issue "an order to show cause as to why KMC should not immediately cease and desist from transporting members of the general public on tours that travel over the public highways on the [Big Island], unless KMC applies for and obtains a CPCN."

On June 8, 2004, the Division of Consumer Advocacy of the Department of Commerce and Consumer Affairs (consumer advocate) advised the PUC that it would not participate in the instant proceeding, pursuant to Hawai'i Administrative Rules (HAR) § 6–61–62.[6] On July 30, 2004, KMC filed its answer

---

3. Article VI, cl. 2 of the United States Constitution provides:

 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

4. According to the preemption doctrine,

 [t]he Supremacy Clause ... invalidates state laws that interfere with, or are contrary to, federal law. Congress may preempt state law in several different ways. Congress may do so expressly (express preemption). Even in the absence of express preemptive text, Congress' intent to preempt an entire field of state law may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation (field preemption). State law also is preempted when compliance with both state and federal law is impossible, or if the operation of state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress (conflict preemption).

 *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045–46 (9th Cir.2001) (internal quotation marks and citations omitted).

5. Jack's Tours described a federal enclave as "an area of land owned by the United States, ownership of which had been (1) consented to by the state in which the land is located ... and (2) if after 1940, formally accepted by the United States." (Citations omitted.) "Under the federal enclave doctrine, a state loses the right to legislate with respect to activities occurring in the enclave unless it reserved its right to do so when it consented to the purchase of the property by the United States." *Sundaram v. Brookhaven Nat'l Labs.*, 424 F.Supp.2d 545, 569 (E.D.N.Y. 2006) (citing *Paul v. United States*, 371 U.S. 245, 268, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963)).

6. HAR § 6–61–62 provides in relevant part:

 (a) The consumer advocate is, *ex officio*, a party to any proceeding before the [PUC]. The consumer advocate shall, except as noted here-

to the complaint. KMC asserted that, as a "non-appropriated fund instrumentality" (NAFI),[7] it is entitled to immunity from regulation by the PUC unless Congress expressly consented to such regulation. According to KMC, because "Congress has not enacted any statute granting the ... PUC jurisdiction to regulate any aspect of KMC bus tour operations[,]" HRS chapter 271 does not apply to NAFIs such as KMC. Moreover, KMC claimed that it "does not hold itself out to the general public as a common carrier[;]" rather, it "offers its services only to the authorized patronage group provided for in federal regulations." KMC further alleged that the "PUC lacks jurisdiction and is not the correct tribunal to make a finding that actions of a federal [NAFI] is [sic] not engaged in a federal governmental function." Thus, KMC requested that the PUC dismiss the complaint.

On September 10, 2004, the PUC entered an order, stating that, "[u]pon review of the pleadings, the [PUC] concludes that[,] prior to scheduling an evidentiary hearing in this docket, it must determine whether it has subject matter jurisdiction to hear and decide upon the [c]omplaint." Consequently, the PUC ordered the parties to file supplemental briefing solely on the issue "whether the [PUC] has subject matter jurisdiction to hear and decide upon this complaint."

On September 27, 2004, KMC filed its supplemental brief with the PUC. KMC contended that, "[a]bsent specific [c]ongressional waiver of immunity[,] State regulations would not apply to federal governmental [morale, welfare, and recreation (MWR) ] op-

erations, such as KMC." Generally, the MWR program is a quality-of-life program that is intended to support readiness "by providing a variety of community, soldier, and family support activities and services." Army Regulation (AR) 215–1 § 1–7(a); *Latchum v. United States*, 183 F.Supp.2d 1220, 1223 (D.Haw.2001). The MWR program is designed to meet the needs of those involved with a military installation, including not only the soldiers, but also retirees and civilian employees, as well as their families. AR 215–1 § 1.8(a); *Latchum*, 183 F.Supp.2d at 1223. According to KMC, "all NAFI[s] associated with military and naval operations are [part of the MWR program] governed by Department of Defense (DOD) Directive 1015.2." *See, e.g., Latchum*, 183 F.Supp.2d at 1223–24 (stating that the Waianae Army Recreational Center (WARC) "is an Army [NAFI] of the United States" and that "NAFIs like WARC are considered integral and essential to the conduct of the military mission") (citations and internal quotation marks omitted). "The [DOD] recognizes that MWR programs are vital to mission accomplishment and form an integral part of the non-pay compensation system." *Id.* at 1224 (internal quotation marks and citation omitted). Jack's Tours does not appear to dispute that KMC is operated as part of the Army's MWR program.

In its supplemental brief, KMC specifically claimed that "Congress has made morale and welfare of the members of the armed services a governmental function and [the] responsibility of the Secretary of the Army[.]" (Citing 10 United States Code (U.S.C.) § 3013(b)(9).[8]) Moreover, KMC argued that,

---

in, submit a statement of position to the [PUC], with service to the parties of record, stating: (1) Whether it intends to participate in the proceeding[.]

**7.** A NAFI "is one which does not receive its monies by congressional appropriation." *United States v. Hopkins*, 427 U.S. 123, 125 n. 2, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) (citations omitted); *see also AINS, Inc. v. United States*, 365 F.3d 1333, 1337 (Fed.Cir.2004) ("The *sine qua non* of all NAFIs is apparent in their name: they do not receive appropriated funds. As a result, all NAFIs are government 'instrumentalities' that are at least essentially self-supporting."). The United States Supreme Court "has repeatedly recognized that NAFIs are 'arms of the govern-

ment' deemed 'essential for the performance of governmental functions.' " *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1363 (Fed.Cir. 2005) (quoting *Standard Oil Co. v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942)) (other citations omitted).

**8.** 10 U.S.C. § 3013(b)(9) provides:

(b) Subject to the authority, direction, and control of the Secretary of Defense and subject to the provisions of chapter 6 of this title, the Secretary of the Army is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Army, including the following functions:

. . . .

if[,] hypothetically[,] KMC were found offering services to the "general public," that would be an infraction of the *federal* regulation governing KMC. Such an infraction of federal regulations would be a matter for the appropriate *federal* authorities to resolve, *not* the [PUC]. That factor appears to go to the heart of the issue of subject matter jurisdiction in this proceeding.

(Emphases in original.) In response to Jack's Tours' allegation that KMC was offering tours to the general public by transporting 'Āina Haina students and their chaperones, KMC asserted that "[t]he [c]omplaint does not plead facts that would assure the [PUC] that passengers outside the eligible patronage group were involved in the tours in question." KMC maintained that, "[u]nder applicable federal regulations, KMC bus tours may include the students and/or chaperones of 'Āina Haina School if they are dependents and/or sponsored guests, *i.e.*, persons within the KMC federally authorized patronage group." Thus, KMC urged the PUC to dismiss the complaint for lack of subject matter jurisdiction.

On September 30, 2004, Jack's Tours filed its supplemental brief with the PUC. Jack's Tours contended that "KMC is not exempt from [the PUC]'s jurisdiction as a NAFI for services that it offers to the general public." (Capitalization altered.) Specifically, KMC argued that, "just because KMC is a NAFI establishment does not *ipso facto* cloak KMC with governmental immunity for all its business." In addition, Jack's Tours claimed, "assuming *arguendo* that KMC is a NAFI, Jack's Tours is not seeking th[e PUC]'s regulation of KMC's activities provided to authorized patrons, such as active duty military personnel, members of the reserves or national guard, retired or civilian [DOD] employees, their families, and their authorized guests." Instead, Jack's Tours asserted that it sought the PUC's "regulation *only* of KMC's activities that are directed at and provided for members of the general public, which would be in direct competition with Jack's Tours and other PUC regulated motor carriers on the [Big Island]." (Emphasis in

original.) Moreover, in response to KMC's allegation that Jack's Tours did not plead facts that would assure the PUC that the 'Āina Haina students and their chaperones were outside the "federally authorized patronage group," Jack's Tours argued that

only investigation by the PUC or discovery in this case will yield the requisite information and evidence relating to KMC's claim it does not offer tour services to members of the general public over the public highways of the State or that all of its customers are within the "eligible patronage group" or "sponsored guests" and therefore not subject to PUC jurisdiction.... [The PUC], at the very least, has jurisdiction to determine whether KMC is offering and providing tours to the general public over the highways of this State and to regulate those activities.

Furthermore, KMC appears to be alleging that all members of the general public may be "sponsored guests" of KMC, as long as they can find someone who will sponsor them, regardless of relation. This is an extremely broad interpretation.... This surely is not the intent of [AR] 215–1, which specifically contemplates use of KMC facilities primarily by active duty personnel, with "incidental" guest use.

(Emphases omitted.)

Jack's Tours also contended that the PUC "is not preempted from exercising jurisdiction over KMC for services provided to the general public under the Supremacy Clause." (Capitalization altered.) Specifically, Jack's Tours argued that the PUC's regulation of KMC would not constitute impermissible direct or indirect regulation of the federal government. Finally, Jack's Tours submitted that "KMC is not exempt from [the PUC]'s jurisdiction under the federal enclave exception." (Capital letters altered.) Thus, Jack's Tours urged that the PUC has jurisdiction to hear and decide the allegations asserted in its complaint.

On June 17, 2005, the PUC entered its decision and order, dismissing Jack's Tours' complaint for lack of subject matter jurisdiction. Specifically, the PUC stated:

(9) Administering (including the morale and welfare of personnel).

*KMC is under the control of the Secretary of the Army, subject to the authority, direction[,] and control of the Secretary of Defense. 10 [U.S.C.] § 3013(b)(9). Where the federal government has not granted a state authority to regulate a federal government function, the Supremacy Clause preempts any such regulation.... [T]here has been no congressional grant of jurisdiction over KMC to the State. Thus, without circumventing the Supremacy Clause, the [PUC] cannot assume jurisdiction over KMC in the instant [c]omplaint.*

Neither can the [PUC] assume jurisdiction over a NAFI, such as KMC, as Jack's [Tours] argues the [PUC] should do. We are not authorized to make a determination on Jack's [Tours'] allegation that KMC is not a NAFI because it provides its transportation services to members of the general public beyond its authorized patronage group. First of all, Jack's [Tours'] assertion that the group from Aina Haina Elementary is not authorized by KMC's rules and regulations is speculative. Even assuming[ ] *arguendo* [ ] that this assertion is true, the [PUC] is unable to determine that KMC is in violation of its rules and regulations, and therefore not a NAFI as alleged by Jack's [Tours], because it would require a consideration and analysis of the relevant DOD directives and Army regulations, which is not within our jurisdiction under HRS [c]hapter 271.

The same can be said for Jack's [Tours'] assertion that the federal enclave exception does not provide KMC with an exemption from [PUC] jurisdiction. Again[,] assuming[ ] *arguendo* [ ] that Jack's [Tours] is correct in its assertion that the State has reserved jurisdiction over violations committed on public highways, outside of the federal enclave, the [PUC] would still have

to establish that a breach of either the DOD directives or Army regulations by KMC has occurred, which also is not within [PUC] jurisdiction pursuant to HRS [c]hapter 271.

(Emphasis added.) Consequently, the PUC concluded that it was "not the appropriate forum to address the allegation in the [c]omplaint" and that, "to the extent Jack's [Tours' c]omplaint pertains to the allegation that [KMC] is in violation of any federal regulation, under the facts and circumstances of this case, the appropriate forum for such a dispute is with federal authorities." Accordingly, the PUC dismissed the complaint without prejudice.

On June 29, 2005, Jack's Tours filed a motion for reconsideration of the PUC's decision and order, pursuant to HAR § 6–61–137.[9] Jack's Tours requested the PUC to reconsider and reverse the June 17, 2005 decision and order, contending that:

Nothing in the plain language of HRS [c]hapter 271 limits [the PUC]'s jurisdiction to privately owned motor carriers. The plain language of HRS [c]hapter 271 simply requires an allegation that an entity has been holding itself out to the general public as a motor carrier....

Jack's Tours did not allege or ask [the PUC], as a threshold matter, to review any federal rules and regulations in determining that KMC was acting as a "motor carrier." ... [A]ll Jack's Tours requested [the PUC] to do as a threshold matter was to review State statutory provisions and PUC rules to determine a violation of HRS § 271–8.... Th[e PUC] has been specifically directed by the State legislature to administer HRS [c]hapter 271, *see* [HRS] § 271–1 (1993) [10], and accordingly to de-

---

9. HAR § 6–61–137 provides in relevant part that the motion for reconsideration "shall be filed within ten days after the decision or order is served upon the party, setting forth specifically the grounds on which the movant considers the decision or order unreasonable, unlawful, or erroneous."

10. HRS § 271–1, entitled "Declaration of policy," provides:

The legislature of this State recognizes and declares that the transportation of persons and

of property, for commercial purposes, over the public highways of this State constitutes a business affected with the public interest. It is intended by this chapter to provide for fair and impartial regulation of such transportation in the interest of preserving for the public the full benefit and use of the highways consistent with the public safety and the needs of commerce; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers, to encourage the establish-

termine whether an entity has been holding itself out to the general public. If not the [PUC], who has authority to determine whether an entity is acting as a "motor carrier" pursuant to HRS [c]hapter 271? It surely cannot be the federal judiciary, as this threshold question is purely a matter of State law.

. . . .

Once th[e PUC] determines that KMC is indeed holding itself out to the general public as a "motor carrier" that would ordinarily be subject to PUC regulation, the [PUC] must then determine whether KMC is nonetheless protected from PUC regulation by virtue of its status as a NAFI, or via the Supremacy Clause or Federal Enclave Exception.

On July 12, 2005, the PUC entered an order denying Jack's Tours' motion for reconsideration. Jack's Tours timely appealed on August 10, 2005.[11]

## II. *STANDARD OF REVIEW*

■ "The existence of subject matter jurisdiction is a question of law that is reviewable *de novo* under the right/wrong standard." *Aames Funding Corp. v. Mores,* 107 Hawai'i 95, 98, 110 P.3d 1042, 1045 (2005) (internal quotation marks, brackets, and citations omitted).

## III. *DISCUSSION*

■ Jack's Tours contends that the PUC "is not preempted from exercising jurisdiction over KMC for services provided to the general public under the Supremacy Clause." (Capital letters altered.) Specifically, Jack's Tours argues that, although "it is true that KMC, as a NAFI, may be an 'instrumentality' of the federal government for some purposes, that status as a NAFI does not automatically exempt KMC from state regulation

in certain situations." Jack's Tours relies on *Armed Forces Cooperative Insuring Ass'n v. Department of Insurance,* 622 P.2d 1318 (Wyo.1980), *overruled on other grounds by Torres v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 95 P.3d 794 (Wyo. 2004), and *Paul v. United States,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), in support of its foregoing contention. In addition, Jack's Tours asserts that, "[e]ven assuming *arguendo* that KMC is able to prove that it is so closely connected with the federal government as to render it indistinguishable from the federal government itself, this would not entitle KMC to immunity for services it provides to the general public." (Emphasis omitted.)

KMC, however, contends that "it is unquestionable that [it] is a federal instrumentality entitled to immunity from state regulation under the Supremacy Clause." Specifically, KMC argues that:

In conformity with [AR] 215–1, KMC has been established as a [NAFI]. KMC exists to promote government purposes—including military morale, recruitment, and retention—and is "legally constituted as an 'instrumentality of the United States.' " KMC's funds are considered government funds; its property is government property; and it operates under the authority of the United States and subject to [c]ongressional review. KMC's finances and property are also subject to oversight, inventory, control, and audit by officials in the Defense Department, and its operations are overseen by a council that includes active duty military personnel appointed by the local garrison commander or his delegates.

KMC is thus a creature of federal statute and regulation, whose operations are overseen (and, in some circumstances,

---

ment and maintenance of reasonable rates and charges for transportation and related accessorial service, without unjust discrimination, undue preference or advantage, or unfair or destructive competitive practices. This chapter shall be administered and enforced with a view to carrying out the above declaration or policy. HRS § 271–2 (1993) provides that "[t]his chapter[, *i.e.,* chapter 271,] shall be administered by the [PUC.]"

**11.** HRS § 271–33 (1993) provided in relevant part that, "[f]rom the order made on an application for reconsideration or rehearing by the [PUC] under this chapter, *an appeal shall lie to the supreme court* subject to chapter 602 in the manner and within the time provided by chapter 602, and by the rules of court, provided the order is final[.]" (Emphasis added.)

strictly controlled) by federal officials, and whose profits and services exist for the benefit of federal military personnel. Indeed, because of the close link between NAFIs such as KMC and the United States, and the attendant responsibilities and duties that accompany that link, the Secretary of the Army has explicitly stated that KMC—and all similar NAFIs—are "entitled to the same sovereign privileges and immunities as the [f]ederal [g]overnment." The operations of KMC are thus federal functions which "must be left free of regulation" absent "a clear congressional mandate" to the contrary.

(Citations omitted.) Accordingly, KMC concludes—and we agree—that "[c]laims that a federal instrumentality has failed to comply with its own regulations do not alter the analysis. Such assertions raise issues of federal law to be resolved by an agency or court with jurisdiction to hear such claims."

■ Generally, "where Congress does not affirmatively declare its instrumentalities or property subject to regulation, the federal function must be left free of regulation." *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) (internal quotation marks and footnote omitted), *substantive holding superseded by statute as stated in United States v. Penn. Envtl. Hearing Bd.,* 584 F.2d 1273, 1280 n. 22 (3d Cir.1978). In other words, "[b]ecause of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is a 'clear congressional mandate[ ]' [or] 'specific congressional action' that makes th[e] authorization of state regulation 'clear and unambiguous.' " *Id.* (footnotes omitted); *see Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 180, 108 S.Ct. 1704, 100 L.Ed.2d

158 (1988) (stating "[i]t is well-settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation") (citations omitted); *Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.,* 357 F.3d 62, 67 (D.C.Cir.2004) (concluding that "[f]ederal agencies or instrumentalities performing federal functions *always* fall on the 'sovereign' side of [the] fault line; that is why they possess immunity that requires waiver") (internal quotation marks and citation omitted) (emphasis and brackets in original).

In the seminal case of *Standard Oil Co. of Cal. v. Johnson,* 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), the United States Supreme Court determined that Army post exchanges [12] are "arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, [13] share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes." *Id.* at 485, 62 S.Ct. 1168. The Supreme Court relied on several factors in reaching its conclusion that post exchanges operate as "arms of the government": (1) "post exchanges operate under regulations [promulgated by] the Secretary of War [14] pursuant to federal authority"; (2) Congress had recognized these activities as "governmental," with the profits "used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops"; and (3) "the commanding officer[,] subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange." *Id.* at 483–85, 62 S.Ct. 1168.

---

**12.** "The object of [post] exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges." *Standard Oil,* 316 U.S. at 484–85, 62 S.Ct. 1168.

**13.** "The War Department was the predecessor agency to the Department of the Army." *Bowman v. United States,* 848 F.Supp. 979, 983 (M.D.Fla.

1994). In turn, the "DOD comprises numerous components including the various military agencies, such as the Army, Navy, and Air Force." *Nat'l Res. Def. Council v. United States Dep't of Def.,* 388 F.Supp.2d 1086, 1093 n. 7 (C.D.Cal. 2005).

**14.** The Secretary of War is now known as the Secretary of the Army. *Envtl. Defense Fund v. Marsh,* 651 F.2d 983, 1002 n. 24 (5th Cir.1981).

Likewise, in *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), the Supreme Court concluded that the American National Red Cross (Red Cross) is an instrumentality of the federal government "for purposes of immunity from state taxation levied on its operations[.]" *Id.* at 358, 87 S.Ct. 464. Although the Supreme Court stated that "there is no simple test for ascertaining whether an institution is so closely r[e]lated to governmental activity as to become a tax-immune instrumentality," *id.* at 358–59, 87 S.Ct. 464, the Court relied on the following factors in determining that the Red Cross is "clearly" an instrumentality of the United States: (1) the Red Cross was chartered by Congress; (2) it is subject to supervision and audit by the federal government; (3) its principal officers and several of its governors are appointed by the President of the United States; (4) it performs a variety of important federal functions "indispensable to the workings of our Armed Forces around the globe"; and (5) it "receives substantial material assistance from the [f]ederal [g]overnment." *Id.* at 359–60, 87 S.Ct. 464. *Cf. Fla. Dep't of Revenue v. Naval Aviation Museum Found., Inc.,* 907 So.2d 586, 589–90 (Fla.Dist.Ct.App. 2005) (determining that a nonprofit aviation foundation that operated a gift shop within the federal government's naval museum was not an instrumentality entitled to immunity on the bases that it was a charitable corporation established under the laws of Florida for "the specific purpose of being 'unfettered' by government control," it was not operated by federal employees, the federal government does not regulate, supervise, or appoint members of the governing board of the foun-

dation, and the foundation "does not fulfill an essential function of government").

■ Here, Jack's Tours does not provide any authority to the contrary that KMC is an instrumentality of the federal government or that KMC is operated as part of the Army's MWR program. Jack's Tours stated in its complaint, and KMC agreed in its answer, that KMC is "owned and operated by the federal government." As previously stated, 10 U.S.C. § 3013(b)(9) provides that, "[s]ubject to the authority, direction, and control of the Secretary of Defense ..., the Secretary of the Army is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Army, including[, *inter alia,* a]dministering" "the morale and welfare of personnel[ ]." *See supra* note 8. In addition, 10 U.S.C. § 3013(g)(3) provides that the Secretary of the Army may "prescribe regulations to carry out his functions, powers, and duties under this title[, *i.e.,* Title 10, relating to the Armed Forces]." The Secretary of the Army has promulgated AR 215–1, which "implements [DOD] and congressional policies[ ]" and "contains administration, operation, and management policies governing the Army's [MWR] activities[ ] and [NAFIs]." [15] As previously mentioned, Jack's Tours does not dispute that KMC "exists to promote government purposes—including military morale, recruitment, and retention[.]" AR 215–1 § 1–9, entitled "[MWR] program objectives," provides that the MWR program:

a. Supports combat readiness and effectiveness.

---

15. On appeal, Jack's Tours appears to attack KMC's reliance on AR 215–1 by merely stating that it is "questionable" whether AR 215–1 is "the type of regulation[ ] contemplated ... as [a] 'federal regulation[ ].' " However, "authorized War Department[, *i.e.,* Department of the Army, *see* supra note 13,] regulations have the force of law." *Standard Oil,* 316 U.S. at 484, 62 S.Ct. 1168 (footnote omitted). *See also Levy v. Dillon,* 286 F.Supp. 593, 596 (D.Kan.1968) (stating that Army regulations, "unless inconsistent with existing statutory enactments, have the force of law") (citations omitted); *Brame v. Garner,* 232 S.C. 157, 101 S.E.2d 292, 293 (1957) (stating that "[d]uly authorized and promulgated Army Regulations have the force of law") (citation omitted);

*but see Maynard & Child, Inc. v. Shearer,* 290 S.W.2d 790, 794, *as modified on denial of hearing,* (Ky.Ct.App.1956) (stating that a War Department regulation "is, of course, not binding on this court, but is entitled to be given weight"). Nevertheless, Jack's Tours itself relies on the validity of AR 215–1. For example, Jack's Tours contends that "KMC's broad interpretation" of "sponsored guests" does not comport with "the intent of [AR] 215–1, which specifically contemplates use of KMC facilities primarily by active duty personnel, with 'incidental' guest use." Jack's Tours also alleges that "[AR] 215–1 confirms that NAFIs are limited to serving certain patrons."

b. Supports recruitment and retention of quality personnel.

c. Provides leisure time activities which support a quality of life commensurate with generally accepted American values.

d. Promotes and maintains the mental and physical well-being of authorized personnel.

e. Fosters community pride, soldier morale, and family wellness; promotes unit esprit de corps.

f. Eases the impact of unique aspects of military life, such as frequent relocations and deployment.

AR 215–1 § 6–2 further provides in relevant part that "MWR programs are established primarily for active duty (AD) military personnel [and such] personnel receive first priority for participation or use if space is limited." As previously stated, KMC's website provides that KMC, as a joint services recreation center, offers "accommodations, amenities[,] and tour packages" and "is open to all active and retired military, Reserve and National Guard members, current and retired [DOD] civilian employees, dependents[,] and sponsored guests." As such, it reasonably can be said that the services provided by KMC are "integral and essential to the conduct of the military mission." *See, e.g., Latchum*, 183 F.Supp.2d at 1223–24 (recognizing that the Waianae Army Recreational Center, which is operated as part of the Army's MWR program and provides vacation cabins for rent for an authorized patronage group, primarily, members of the military and their families, are "considered integral and essential to the conduct of the military mission") (internal quotation marks and citations omitted). Furthermore, as KMC points out, "garrison commanders" "plan, manage, fund, and operate MWR/Lodging programs and services[.]" AR 215–1 § 2–5b. Specifically, KMC stated that "[t]he relevant chain of command from the [KMC] tour bus operations to [sic] begins with Mr. Bruce P. Taylor, Base Operations and Services Manager for KMC, who reports to Mr. Randy Hart, Director of KMC, who reports to Mr. Ted Otaguro, Director of Commander Activities, U.S. Army Garrison–Hawai'i, who reports to Colonel Howard J. Killian, Commander, U.S. Army Garrison–Hawai'i, located at Schofield Barracks, HI."

Thus, in light of the foregoing, it can be said that KMC is an "arm[ ] of the [federal] government deemed by it essential for the performance of governmental functions" and "share[s] in fulfilling [the] duties entrusted to it," thereby "partak[ing] of whatever immunities it may have under the [federal c]onstitution and federal statutes." *Standard Oil*, 316 U.S. at 485, 62 S.Ct. 1168 (citations omitted). *See, e.g., Maynard & Child*, 290 S.W.2d at 794 (concluding that an officer's club organized under Army regulations, providing "an officers' mess and various other recreational services for the members" and "subject to the control of the commanding officer of an Army post and managed by Army officers" was an instrumentality of the United States, "unless[, *inter alia*,] the proof shows that the [officer's club] was not in fact an officer's club under the War Department regulations"); *Brame*, 101 S.E.2d at 293–94 (determining that an army officers' mess organized under provisions of army regulations was immune from suit under federal law by which the State of South Carolina and its courts are bound). Stated differently, KMC is an "instrumentalit[y] of the United States and[,] thus[,] enjoy[s] governmental immunity." *United States v. New Mexico*, 455 U.S. 720, 736–37, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (stating that the Supreme Court's "other cases describing the nature of a federal instrumentality have used [such] language [as]: 'virtually an arm of the Government,' *Dep't of Employment*, 385 U.S. at 359–60, 87 S.Ct. 464, 'integral parts of a governmental department,' and 'arms of the Government deemed by it essential for the performance of governmental functions,' *Standard Oil*, 316 U.S. at 485[, 62 S.Ct. 1168]") (ellipsis and brackets in original omitted).

Moreover, Jack's Tours' reliance on *Armed Forces Cooperative Insuring Ass'n v. Department of Insurance* [hereinafter, *AFCIA* ] is misplaced. In that case, the appellant, AFCIA, was

an unincorporated "Non–Profit Military Association" organized in 1877, with its headquarters continuously located on the United States Military Reservation at Fort

Leavenworth, Kansas, where, it contends, it has its only offices, agents[,] and employees. [AFCIA] comprises some 88,000 active and retired members of the armed services. On the many military reservations around the world, AFCIA is organized, authorized and designated by both the Department of the Army and Department of the Navy (including the Marine Corps) as an official "Non–Profit Military Association." It is also recognized by the [DOD] as a "Non–Profit Military Association."

622 P.2d at 1323 (footnotes omitted). AFCIA contended, *inter alia*, that it was "a federal instrumentality and as such is immune from state taxation and regulation." *Id.* at 1335. In support, AFCIA asserted that "its mission is to provide low-cost insurance to military personnel and thereby contribute in a small way toward making military service financially attractive[.]" *Id.* In addition, AFCIA "argue[d] that it is a federal instrumentality because it receives an effective subsidy from the military base at Fort Leavenworth in the form of token rent for its headquarters." *Id.* The Wyoming Supreme Court, however, concluded that AFCIA was not a federal instrumentality inasmuch as it "point[ed] to no regulations or statutes authorizing its activity[.]" *Id.* at 1337. Here, on the other hand, KMC points to AR 215–1 as authorizing its activity and Jack's Tours does not seriously dispute such authorization. *See supra* note 15. Consequently, *AFCIA* is distinguishable from the instant case.[16]

Nonetheless, Jack's Tours further claims on appeal that "state regulation is permitted for NAFI activities that are not exclusive to authorized and limited patronage groups, and the purposes ordinarily served by providing NAFIs with government immunity are not present when NAFIs begin competing with 'outside' businesses." None of the cases relied on by Jack's Tours, however, support what appears to be its unstated central contention, *i.e.*, that NAFIs are stripped of their immunity if they are determined to be violating their governing regulations. *See Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.*, 632 F.2d 680, 692 (7th Cir.1980) (concluding that the Army and Air Force Exchange Services (AAFES) is a governmental instrumentality entitled to immunity from the Robinson–Patman Amendments to the Clayton Act); *United States v. Forfari*, 268 F.2d 29, 35 (9th Cir.1959) (holding that a civilian employee of a NAFI was barred from bringing an action under the Federal Tort Claims Act (FTCA)); *Latchum*, 183 F.Supp.2d at 1223, 1225 (merely noting that "[t]he general public cannot rent cabins at [the Waianae Army Recreational Center]"; resolution of case turned on application of the *Feres* doctrine, wherein the federal government is not liable under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service") (internal quotation marks and citation omitted); *Falls City Brewing Co. v. Reeves*, 40 F.Supp. 35, 40 (W.D.Ky.1941) (concluding that a post exchange is a federal instrumentality within the purview of the Buck Act, which preserves immunity from state taxation for instrumentalities of the federal government; the exchange was not required to purchase a license from the Commonwealth of Kentucky authorizing it to engage in the business of selling malt beverages); *W. Ky. Coca–Cola Bottling Co. v. Revenue Cabinet*, 80 S.W.3d 787, 794 (Ky.Ct.App.2001) (determining that a post exchange was an instrumentality of

**16.** Jack's Tours' reliance on *Paul v. United States* is likewise misplaced. In *Paul,* the "main question" facing the Supreme Court was "whether California [could] enforce her minimum wholesale price regulations as respects milk sold to the United States at three military installations ... located within California and used for strictly military consumption, for resale at federal commissaries and for consumption or resale at various military clubs and post exchanges." 371 U.S. at 247, 83 S.Ct. 426 (footnote omitted). However, the Supreme Court noted at the outset that

[t]he United States ha[d] abandoned a ... claim that California cannot constitutionally enforce her price regulations against producers with respect to milk sold to distributors for processing and ultimately resold to the United States. The abandonment of this claim is not a confession of error but only *a decision not to assert immunity from that price control* as a matter of procurement policy.

*Id.* at 248 n. 1, 83 S.Ct. 426 (emphasis added). Inasmuch as KMC *is* asserting immunity from the instant state regulation, *Paul* is not germane to this case.

the United States within the purview of the Buck Act, and, thus, beverage sales to it by a bottling company pursuant to the company's contract with the post exchange were exempt from state sales tax).

Jack's Tours also relies on *Maynard & Child* in support of its foregoing proposition that NAFIs are stripped of their immunity if they are determined to be violating their governing regulations. Such reliance, however, is again misplaced. As previously stated, the court in *Maynard & Child* concluded that an officer's club organized under Army regulations, providing "an officers' mess and various other recreational services for the members," and "subject to the control of the commanding officer of an Army post and managed by Army officers" was an instrumentality of the United States *"unless* [, *inter alia,*] the proof shows that the [officer's club] was not in fact an officer's club under the War Department regulations." 290 S.W.2d at 794 (emphasis added). In other words, if the officer's club was proven not to have been organized under the War Department regulations, then it would not be an instrumentality of the United States. In this case, Jack's Tours is not arguing that KMC was not organized under relevant federal regulations; rather, Jack's Tours essentially asserts that, because KMC violated its own regulations by allegedly conducting tours for those outside of its authorized patronage group as prescribed by AR 215–1, it is operating as a common carrier that should be subject to the PUC's regulation. However, in order for KMC to be subject to the PUC's regulation, it must be established that: (1) KMC is *not* an instrumentality of the United States and, therefore, not entitled to invoke immunity; or (2) KMC *is* an instrumentality of the United States, but there is a "clear and unambiguous" congressional authorization waiving KMC's immunity from direct state regulation. Other than its conclusory assertion that KMC should be subject to regulation by the PUC because it allegedly conducted tours for those outside the patronage group, Jack's Tours does not provide any argument as to *how* KMC "would ... cease

to be a federal instrumentality and become subject to state law requirements" by *violating* its governing regulation. Moreover, Jack's Tours does not point to any "clear and unambiguous" congressional authorization waiving KMC's immunity from direct state regulation. Consequently, Jack's Tours' contention is without merit. We, therefore, conclude that the PUC correctly determined that it could not "assume jurisdiction over KMC in the instant [c]omplaint." [17] Accordingly, we hold that the PUC did not err in dismissing Jack's Tours' complaint for lack of subject matter jurisdiction.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the PUC's June 17, 2005 decision and order.

---

**17.** In light of this court's holding, this court need not address the remainder of Jack's Tours' contentions.